UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Application of Adele Zarzur,

                        Applicant,

Pursuant to 28 U.S.C. § 1782 for Judicial Assistance
in Obtaining Evidence for Use in Foreign and
International Proceedings Pending in the Federative
Republic of Brazil.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/14/2025
```

22 Misc. 348 (AT) (SN)

**ORDER ADOPTING
REPORT AND
RECOMMENDATION**

ANALISA TORRES, District Judge:

       Petitioner, Adele Zarzur, sought an order granting discovery for use in foreign

proceedings under 28 U.S.C. § 1782. *See generally* ECF No. 2. After the Court granted

Petitioner's application, her brothers, Ricardo Waldomiro Zarzur and Roberto Waldomiro Zarzur

(the "Zarzur Brothers"), moved to intervene and vacate the Court's order. ECF No. 24. The

Court temporarily stayed its order granting Petitioner's application and referred the Zarzur

Brothers' motion to the Honorable Sarah Netburn, ECF Nos. 26, 35, who issued a report (the

"R&R") recommending that the motion be denied as untimely, *see generally* R&R, ECF No. 49.

Before the Court are the Zarzur Brothers' objections to the R&R. Objs., ECF No. 51; *see also*

Resp., ECF No. 53. For the reasons stated below, the Court overrules the Zarzur Brothers'

objections, adopts the R&R in full, and lifts the stay, allowing Petitioner's discovery to proceed.

<strong>BACKGROUND</strong>[1]

       Petitioner and her brothers are engaged in a dispute regarding the assets of their late

father, Waldomiro Zarzur, and the Zarzur Brothers' management of the late Mr. Zarzur's

companies. R&R at 2. Petitioner has initiated two proceedings in Brazil, a probate inventory

---

[1] The Court presumes familiarity with the facts and procedural history of this action as detailed in the R&R, *see* R&R at 2–4, and recites only those facts and procedural details relevant to this order.

proceeding to account for her father's assets (the "Brazilian Probate Proceeding"), and a corporate proceeding seeking damages for the Zarzur Brothers' allegedly fraudulent mismanagement of their father's companies (the "Brazilian Corporate Proceeding"). *Id.*

On December 6, 2022, Petitioner applied for leave under § 1782 to seek discovery from financial institutions located within this District concerning her father's assets and his companies, the Zarzur Brothers, and their management of the companies for use in the Brazilian proceedings. ECF No. 1. The Zarzur Brothers became aware of Petitioner's application six days later, on December 12. Objs. at 4; R&R at 3–4. On December 7, the Court ordered Petitioner to serve her application on the financial institutions from whom she seeks discovery and set an approximately two-month-long briefing schedule for any opposition to Petitioner's application. ECF No. 6. The Court received only one response to Petitioner's application, from the Federal Reserve Bank of New York, in which the Bank stated that it took "no position on whether Petitioner is entitled to discovery under 28 U.S.C. § 1782" and that it "w[ould] respond to any [c]ourt-ordered discovery in th[e] matter." ECF No. 17. About one year later, on January 8, 2024, the Court granted Petitioner's unopposed application. ECF No. 19.

More than six weeks later—and more than a year after the Zarzur Brothers were initially alerted to Petitioner's application—the Zarzur Brothers moved to intervene, vacate the Court's order, quash Petitioner's subpoenas, oppose her application, and stay discovery. ECF No. 24. The Court temporarily stayed its order granting Petitioner's application, directed Petitioner to respond to the Zarzur Brothers' motion, and referred the motion to Judge Netburn for a report and recommendation. ECF Nos. 26, 35.

On August 22, 2024, Judge Netburn issued the R&R, recommending that the Zarzur Brothers' motion to intervene be denied as untimely or, in the alternative, for lack of standing.

2

*See generally* R&R.  After the Zarzur Brothers filed their objections to the R&R and Petitioner filed her response, the Zarzur Brothers notified the Court that the Brazilian Probate Proceeding had been dismissed.  ECF No. 54.  Accordingly, by order dated January 2, 2025, the Court directed Petitioner and the Zarzur Brothers to file supplemental briefing addressing whether Petitioner's discovery application, or any portion thereof, is now moot.  ECF No. 55.

## DISCUSSION

I.    Legal Standard

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3).  The Court may adopt those portions of the R&R to which no objection is made "as long as no clear error is apparent from the face of the record."  *Oquendo v. Colvin*, No. 12 Civ. 4527, 2014 WL 4160222, at *2 (S.D.N.Y. Aug. 19, 2014) (citation omitted).

When a party makes specific objections, the Court reviews *de novo* those portions of the R&R to which objection is made.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).  However, when a party "makes only conclusory or general objections, or simply reiterates the[ir] original arguments," the Court reviews the R&R "strictly for clear error."  *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 174 (S.D.N.Y. 2018), *aff'd*, 837 F. App'x 841 (2d Cir. 2021) (summary order); *see also Bailey v. U.S. Citizenship & Immigr. Servs.*, No. 13 Civ. 1064, 2014 WL 2855041, at *1 (S.D.N.Y. June 20, 2014) ("[O]bjections that are not clearly aimed at particular findings . . . do not trigger *de novo* review."); *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) ("[W]here objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [motion], reviewing courts should review a report and recommendation for clear error." (citation omitted)).

An R&R is clearly erroneous if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citation omitted); *see also Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009).

II.    <u>The Zarzur Brothers' Objections</u>

The Zarzur Brothers object to the R&R's conclusion that their motion to intervene is untimely and may be denied on that basis alone. Objs. at 10–20; *see* R&R at 6–12. They also contend that the R&R should be rejected as moot, and Petitioner's application denied on the same basis, because the Brazilian Probate Proceeding has been dismissed. ECF No. 60 at 1. The Court addresses each set of arguments in turn.

A. Timeliness

To satisfy the standard for intervention as of right or by permission under Federal Rule of Civil Procedure 24, "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (quotation omitted). The Second Circuit has "underscored that a failure to satisfy *any one* of these four requirements is a sufficient ground to deny the application." *Id.* (alteration adopted) (emphasis in original) (quotation omitted). The court has also emphasized that intervention is a "fact-intensive" inquiry in which "the particular facts of each case are important, and prior decisions are not always reliable guides." *Id.* (quotation omitted).

The first requirement for intervention—timeliness—"defies precise definition." *Id.* at 1058 (quotation omitted). Timeliness is a "flexible" standard that is "entrusted to the district

judge's sound discretion." *Id.* (quotation omitted).  In determining whether a motion to intervene

is timely, the Court may consider, among other factors:

> (a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness.

*Id.* (quotation omitted).

According to the Zarzur Brothers, the R&R impermissibly imposed a "bright-line"

timeliness rule by "start[ing] the clock for intervention from the moment when the [Zarzur

Brothers] kn[e]w or ha[d] reason to know that their interests [were] threatened" by Petitioner's

application.  Objs. at 10–11 (quoting R&R at 7–8).  Not so.  As it was required to do, the R&R

considered "the length of time the [Zarzur Brothers] knew or should have known of [their]

interest [in the litigation] before making the[ir] motion."  *Floyd*, 770 F.3d at 1058 (quotation

omitted); *see* R&R at 7.  The R&R correctly concluded that the Zarzur Brothers knew about

Petitioner's application within days of Petitioner's filing in this Court, and it reasonably found

that this factor militates in favor of—but does not by itself require—a finding of untimeliness.

*See* R&R at 7–9.

The Zarzur Brothers contend that the R&R overlooked the fact that "[m]ost petitions

brought pursuant to [§] 1782 are granted *ex parte*," and that courts in this District have,

therefore, routinely granted motions to intervene after *ex parte* petitions were granted and

subpoenas issued.  Objs. at 13.  The Court agrees with the R&R that the cases referenced by the

Zarzur Brothers are distinguishable.  *See* R&R at 7–9; *see also Floyd*, 770 F.3d at 1057.

Although Petitioner initially filed her application *ex parte*, the Court promptly directed her to

serve the application on all respondent discovery targets and provided a lengthy opportunity for

any impacted party to oppose the application.  *See* ECF No. 6.  In other words, the Court did not

adjudicate Petitioner's application *ex parte*. Although the Zarzur Brothers were not named as respondents to Petitioner's contemplated subpoenas, they were notified of her application just days after it was filed, and they knew that Petitioner was seeking evidence related to them and their management of their father's companies for use in the Brazilian proceedings. The Zarzur Brothers themselves have emphasized that there is "[n]o meaningful distinction . . . between the[ir] position . . . and that of the companies whose accounts are being subpoenaed through the [§] 1782 application." Objs. at 9. The Zarzur Brothers also knew that any opposition to Petitioner's application was due by January 20, 2023. ECF No. 6. That none of the respondents opposed Petitioner's application should have been sufficient notice for the Zarzur Brothers to recognize that the only way they could reliably protect their interests would be to timely intervene. Instead, they waited more than a year before entering an appearance and filing a motion—only after the Court granted Petitioner's application and directed the discovery to proceed. *See* ECF No. 24. Faced with these facts, the R&R did not err by distinguishing this case from run-of-the-mill § 1782 petitions that are granted *ex parte* before any interested party becomes aware of the petition or has an adequate opportunity to challenge it. The Court, therefore, agrees with the R&R that the first timeliness factor—the length of time the Zarzur Brothers knew their interests were at stake yet failed to seek intervention—weighs against a finding of timeliness.

The Zarzur Brothers argue that the R&R failed to properly balance the second and third timeliness factors, which consider the prejudice to either party if the motion to intervene is granted or denied. Objs. at 14–19. The Court agrees with the R&R that it would cause substantial and unfair prejudice to Petitioner to reset the litigation on her application years after she initially filed it, through no fault of her own. R&R at 10. The discovery Petitioner seeks to

obtain in this proceeding may bear directly on the evidentiary inquiry currently underway in the Brazilian Corporate Proceeding, *see* ECF No. 63-1 ¶¶ 27–28, and discovery is already in progress on Petitioner's related § 1782 petition in the Southern District of Florida, *see generally In re Zarzur*, No. 23 Misc. 24326 (S.D. Fla.), ECF Nos. 26 (order granting § 1782 petition), 48 (order denying motion to quash subpoena), 49 (order granting Petitioner's motion to compel production), and 56 (order staying production pending negotiation of a protective order).  The Court acknowledges, as the R&R did, that the Zarzur Brothers have an interest in opposing Petitioner's discovery and will lose out on the opportunity to do so if their motion to intervene is not granted.  *See* R&R at 10–11.  Nevertheless, the Court agrees that any prejudice the Zarzur Brothers face is outweighed by the untimeliness of their motion, the prejudice to Petitioner, and the equities and judicial efficiencies at stake.  *See id.* at 11.

The Zarzur Brothers claim that the R&R failed to properly assess the judicial efficiencies implicated by their motion.  They argue that even an unopposed § 1782 petition is never guaranteed to be granted, and it therefore made sense for them to first let the Court determine, on its own, "if the [p]etition could even proceed" before filing their motion to intervene.  Objs. at 4; *see* R&R at 12 ("[The Zarzur Brothers] were waiting for the Court to do the heavy lifting of figuring out whether the [p]etition should be granted.").  Now that the Court has ruled unfavorably to the Zarzur Brothers by granting Petitioner's unopposed application, the Zarzur Brothers claim that it would be judicially "efficient" to wind the clock back more than two years and start over from scratch with the benefit of their involvement.  *See* Objs. at 19–20.  Such a wait-and-see approach amounts to a litigation strategy that the Zarzur Brothers employed at significant risk; it is not, and should not be mistaken for, judicial efficiency.  R&R at 12.

The Zarzur Brothers insist that the Court's denial of their motion will "compel the filing of often needless motions to intervene without letting interested parties take the time to first determine if their rights are actually at issue." Objs. at 19. The claim is a red herring. The Zarzur Brothers, who knew that their rights were at issue just days after Petitioner filed her application, are not akin to an interested party who needs "time to . . . determine if their rights are actually at issue." *Id.* Nor does the Court set forth a bright line rule for the timeliness of intervention motions by adopting the R&R. The Court emphasizes that the Zarzur Brothers knew that their interests were at issue as early as December 2022, and under serious threat as early as January 2023, yet waited more than a year before moving to intervene. That the Court had discretion to grant or deny Petitioner's application, *see* Objs. 2, 4, and, therefore, would have benefitted from timely adversarial briefing on the issue, underscores the incongruity of the Zarzur Brothers' argument that it was unnecessary to intervene while the application, and the briefing schedule the Court set for any opposition to it, was pending. For all of these reasons, the R&R did not err by concluding that considerations of judicial efficiency also weigh against a finding that the Zarzur Brothers' motion is timely.

Finally, the Zarzur Brothers contend that, even if their motion is untimely, the R&R erred by concluding that lack of timeliness alone is sufficient to deny the motion. Objs. at 9–10. Not so. *See Floyd*, 770 F.3d at 1057 (explaining that "failure to satisfy *any one* of the[] four requirements [for intervention] is a sufficient ground to deny the application" (alteration adopted) (emphasis in original) (quotation omitted)); R&R at 6, 12.

B. Mootness

The Zarzur Brothers contend in their supplemental briefing that Petitioner's application is moot because the Brazilian Probate Proceeding has been dismissed and the Brazilian Corporate

Proceeding is subject to a stay.  ECF No. 60.  Having reviewed the parties' submissions, including the supplemental declarations concerning the Brazilian proceedings, the Court finds that Petitioner's application is not moot.  *See* ECF Nos. 59, 59-1, 60, 60-1, 63, 63-1, 65-1. Section 1782 authorizes courts to permit discovery for "use in a proceeding in a foreign or international tribunal."  As Petitioner explains, the Brazilian Probate Proceeding remains pending on appeal in a foreign tribunal, and the discovery she seeks may be of use in that appeal or, if applicable, upon remand.  ECF No. 63-1 ¶¶ 34–35; ECF No. 65-1; *see generally* ECF Nos. 1, 19.  The discovery Petitioner seeks also appears to bear directly on the Brazilian Corporate Proceeding, which remains pending, including that Proceeding's ancillary evidentiary process in which a court-appointed expert is examining claims of corporate wrongdoing that could be aided by evidence obtained in the United States under this application.  *See* ECF No. 63 at 2–4. Accordingly, the Court finds that Petitioner's § 1782 application is not moot.

The Court has considered all of the Zarzur Brothers' objections to the R&R.  To the extent any are not expressly addressed herein, the Court has found that they are conclusory or otherwise an effort "to engage the district court in a rehashing of the same arguments set forth in the original [motion]."  *Edwards*, 414 F. Supp. 2d at 346–47.  The Court has reviewed those objections, as well as any portions of the R&R to which the Zarzur Brothers do not object, for clear error and finds none.

## CONCLUSION

For the foregoing reasons, the Court OVERRULES the Zarzur Brothers' objections, ADOPTS the R&R in full, DENIES the Zarzur Brothers' motion, ECF No. 24, and VACATES the stay ordered by the Court at ECF No. 26.  The Clerk of Court is respectfully directed to close the case.

      SO ORDERED.

Dated: April 14, 2025
      New York, New York

ANALISA TORRES
United States District Judge